## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**SHAWN DUGGAN,**

                                                **CASE NO.:**

       **Plaintiff,**

**v.**

**TRANS UNION, LLC, EXPERIAN
INFORMATION SOLUTIONS, INC.,
EQUIFAX INFORMATION SERVICES
LLC, TIMEPAYMENT CORP.,
NATIONAL CREDIT SYSTEMS, INC.,
COLUMBIA DEBT RECOVERY, LLC,
IDEAL COLLECTION SERVICES INC.,
ONLINE INFORMATION SERVICES,
INC., BOUNCE AI, INC., and LAUNCH
SERVICING, LLC,**

       **Defendants.**

_____/

## PLAINTIFF'S COMPLAINT
## JURY DEMAND

1.    Plaintiff, Name of Plaintiff (hereinafter "Plaintiff") brings this action against  Defendants Trans Union, LLC ("Trans Union"), Experian Information Solutions, Inc. ("Experian"), Equifax Information Services LLC ("Equifax"), TimePayment Corp. ("TimePayment"), National Credit Systems, Inc. ("NCS"), Columbia Debt Recovery, LLC ("Columbia"), Ideal Collection Services Inc. ("Ideal"), Online Information Services, Inc. ("OIS"), Bounce AI, Inc. ("Bounce"), and Launch Servicing, LLC ("Launch"), for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et. seq. (hereinafter "FCRA").

2.      Plaintiff further alleges violation of the Florida Consumer Collection Practices Act, Florida Statute §559.72 et. seq. (hereinafter "FCCPA") against TimePayment, NCS, Columbia, Ideal, OIS, Bounce, and Launch.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

4.      Supplemental jurisdiction exists for Plaintiff's FCCPA claims pursuant to 28 U.S.C. § 1367.

5.      Defendants' voluntary contact with Plaintiff in Florida made it foreseeable that they would be hailed into a Florida court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

6.      Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Orange County, Florida.

## PARTIES

7.      Plaintiff is a natural person who, at all times relevant to this action is and was a resident of Orange County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c), 15 U.S.C. §1692a(3) and Florida Statute §559.55(8).

8.      Trans Union is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

9.      Trans Union is a limited liability company incorporated under the laws of the State of Delaware, whose members are citizens of the state of Illinois. Trans Union is authorized to do business in and regularly conducts business in the

2

State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

10.     Experian is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

11.     Experian is an Ohio corporation incorporated under the laws of the State of Delaware. Experian is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

12.     Equifax is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

13.     Equifax is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

14.     Defendant TimePayment is a corporation that regularly conducts business in the State of Florida or is registered to conduct business in the state of Florida with a principal place of business located at 400 TradeCenter Suite 6950 Woburn, MA 01801.

3

15.    Defendant TimePayment is a "debt collector" within the meaning of Florida Statute §559.55(7).

16.    Defendant NCS is a corporation that regularly conducts business in the state of Florida or is registered to conduct business in the State of Florida with a principal place of business located at 1775 The Exchange SE, Suite 300 Atlanta, GA 30339.

17.    Defendant NCS is a "debt collector" within the meaning of Florida Statute §559.55(7).

18.    Defendant Columbia is a corporation that regularly conducts business in the state of Florida or is registered to conduct business in the State of Florida with a principal place of business located at 906 SE Everett Mall Way, Ste 301 Everett, WA 98208.

19.    Defendant Columbia is a "debt collector" within the meaning of Florida Statute §559.55(7).

20.    Defendant Ideal is a corporation that regularly conducts business in the state of Florida or is registered to conduct business in the State of Florida with a principal place of business located at 5223 A Ehrlich Rd, Tampa, FL 33624.

21.    Defendant Ideal is a "debt collector" within the meaning of Florida Statute §559.55(7).

22.    Defendant OIS is a corporation that regularly conducts business in the state of Florida or is registered to conduct business in the State of Florida with a

principal place of business located at 685 W. Fire Tower Rd, Winterville, NC 28590.

23.    Defendant OIS is a "debt collector" within the meaning of Florida Statute §559.55(7).

24.    Defendant Bounce is a corporation that regularly conducts business in the state of Florida or is registered to conduct business in the State of Florida with a principal place of business located at 333 Metro Park, Ste S-205 Rochester, NY 14623.

25.    Defendant Bounce is a "debt collector" within the meaning of Florida Statute §559.55(7).

26.    Defendant Launch is a corporation that regularly conducts business in the state of Florida or is registered to conduct business in the State of Florida with a principal place of business located at 402 W Broadway, 20th Fl San Diego, CA 92101.

27.    Defendant Launch is a "debt collector" within the meaning of Florida Statute §559.55(7).

28.    Defendants TimePayment, NCS, Columbia, Ideal, OIS, Bounce, and Launch use instrumentalities of interstate commerce for the purpose of furnishing information on specific trade accounts to the consumer reporting agencies, Trans Union, Equifax and Experian, (collectively "credit reporting agencies").

29.    These instrumentalities of interstate commerce are largely electronic, written, or telephonic communications which have effects on consumers and their credit reports within the State of Florida.

**STATUTORY FRAMEWORK OF THE FAIR CREDIT REPORTING ACT**

30.    The Fair Credit Reporting Act, 15 U.S.C. §1681 et. seq., was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

31.    Congress found that "[i]naccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." See 15 U.S.C. §1681(a)(1).

32.    "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy." The Fair Credit Reporting Act seeks to secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

33.    A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. See 15 U.S.C. §1681s-2.

34.    Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *See* 15 U.S.C. § 1681(a)(3),(4).

35.    The FCRA was amended by Congress in 2003 by the Fair and Accurate Credit Transaction Act ("FACTA"), Pub L. No. 108-159 (2003), in order to, among other things, "prevent identity theft, improve resolution of consumer disputes, [and] improve the accuracy of consumer records."

36.    Prior to the 2003 amendments, victims of identity theft were afforded no special protections under the FCRA. As such, consumer reporting agencies ("CRAs", and also referred to herein as "credit reporting agencies") were under no obligation to treat an identity theft claim any different than a regular dispute.

37.    The 2003 amendments made it easier for identity theft victims to get information resulting from identity theft removed from their credit reports. By enacting 15 U.S.C. § 1681c-2(a), Congress required credit reporting agencies to block the reporting of any information in the file of a consumer that the consumer identifies as resulting from identity theft, not later than four business days after receiving (1) appropriate proof of identity, (2) a copy of an identity theft report, (3) the identification of such information by the consumer, and (4) a statement by the

consumer that the information is not information relating to any transaction by the consumer.

38.     A credit reporting agency may decline to "block" information only if the credit reporting agency reasonably determines that the consumer's request is made in error, was based on a material misrepresentation or the consumer obtained goods, services or money as a result of the blocked transaction. See 15 U.S.C. § 1681c-2(c)(1). 15. If a block is declined, the credit reporting agency must then notify the consumer promptly, in the same manner as consumers are notified of the reinsertion of information under § 1681i(a)(5)(B).  See 15 U.S.C. §§ 1681c-2(c)(2).

39.     In the absence of such a determination of material misrepresentation or error, a credit reporting agency cannot decline a request to block without first requesting additional information from the consumer for the purpose of determining the validity of the alleged identity theft. See 12 C.F.R. § 1022.3(i)(1)(iii)(A).

40.     "[I]f a CRA receives a police report containing detailed information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without 'an identifiable concern,' such as an indication that the report was fraudulent." *Osada v. Experian Info. Solutions, Inc.*, No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012) (citing 16 C.F.R. § 603.3(c)(1) (renumbered at 12 C.F.R. § 1022.3(i)(3)(i)).

41.    The FCRA requires a credit reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information" each time it prepares a consumer report. 15 U.S.C. § 1681e(b).

42.    The FCRA requires that if a consumer disputes any item of information contained in their credit file, the credit reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

43.    In performing the reinvestigation, the FCRA requires the credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." 15 U.S.C.S. § 1681i(a)(4).

44.    The FCRA also requires the credit reporting agency to provide notification of the dispute to the person who provided any item that is disputed, along with all relevant information received from the consumer regarding the dispute. 15 U.S.C.S. § 1681i(a)(2)(A).

45.    The FCRA requirements are important, because they help credit reporting agencies ensure that the information in their consumer reports is accurate, they assure that consumers know all the information that is in their files

9

and who has received or requested their reports, and they protect consumer privacy.

46.    If the violation is negligent, the FCRA allows the consumer to recover actual damages. 15 U.S.C. § 1681o(a).

47.    If the violation is willful, the consumer may recover any actual damages, or statutory damages of not less than $100 and not more than $1,000, and punitive damages. 15 U.S.C. § 1681n(a).

48.    A consumer who succeeds on a FCRA action is also entitled to recover their costs and reasonable attorney fees.  15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

49.    The FCRA provides a private right of action against any person that violates the provisions of the FCRA. See 15 U.S.C. §§ 1681o, 1691n.

50.    The FCRA prohibits a CRA from furnishing a consumer report on a consumer unless it has reason to believe that the person requesting the report intends to use the information in connection with a credit transaction, insurance underwriting, or other legitimate business purpose involving the consumer on whom the information is to be furnished. 15 U.S.C. § 1681b(a)(3).

51.    The FCRA prohibits a CRA from furnishing to any person a record of inquiries in connection with a credit or insurance transaction that is not initiated by a consumer. 15 U.S.C. § 1681b(c)(3).

52.    "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. §1681s-2(b) to conduct a reasonable investigation into each of the written disputes

that it receives from the credit reporting agencies. See also Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1302 (11th Cir. 2016).

53.    The FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports. 15 U.S.C. § 1681e(b). If a consumer disputes information contained in their credit report, the FCRA requires a credit reporting agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller." 15 U.S.C.S. § 1681i(a)(1)(A).

54.    If the disputed information is inaccurate or incomplete or cannot be verified, the consumer reporting agency "shall...(i)  promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii)  promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." 15 U.S.C. § 1681(a)(5)(A)(i),(ii).

55.    If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. § 1681n(a).

56.     Under the FCRA, the term "consumer report" generally refers to any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:

      a.  credit or insurance to be used primarily for personal, family, or household purposes;

      b.  employment purposes; or

      c.  any other purpose authorized under section 1681b of this title.

U.S.C. § 1681a(d)(1).

57.     The terms "consumer report", "credit report", and "consumer credit report" are used synonymously herein.

*National CRAs and Furnishers Communicate Consumer Disputes and Responses via the E-Oscar Reporting Platform*

58.     The FCRA requires CRAs to implement an automated reinvestigation system through which furnishers of information to the CRAs may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file. 15 U.S.C. § 1681i(a)(5)(D).

59.     To comply with the automated dispute reinvestigation requirements of the FCRA, Trans Union, Equifax, and Experian along with Innovis Data Solutions, Inc., developed and implemented a browser-based software system that

allows the CRAs to electronically notify furnishers quickly and easily of disputed credit reporting information, and for furnishers to quickly and easily respond to such disputes following the furnisher's investigation of the disputed information.

60.     The system is commonly referred to as e-OSCAR (Online Solution for Complete and Accurate Reporting) and was designed to be Metro 2 compliant. *See* http://www.e-oscar.org/ (last accessed October 2, 2025).

61.     The e-OSCAR system primarily supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Data Form ("AUD") processing, as well as other consumer-dispute-related processes. *See* https://www.e oscar.org/gettingstarted (last accessed October 2, 2025).

62.     The National CRAs provide notice of a consumer's dispute to data furnishers in the ACDV format and forward the ACDV to the furnisher through e-OSCAR.

63.     If a furnisher's investigation of a consumer's dispute determines that the information in dispute is incomplete or inaccurate, the FCRA requires the furnisher to correct the information not only with the CRA that sent the ACDV, but with all other CRAs to whom the furnisher reported that information. 15 U.S.C. § 1681s-2(b)(1)(D).

64.     The e-OSCAR system facilitates the furnisher's compliance with 15 U.S.C. § 1681s-2(b)(1)(D) by sending a "Carbon Copy" of an ACDV response "to each CRA with whom the [furnisher] has a reporting relationship" in addition to

the response to the initiating CRA. *See* https://www.e-oscar.org/gettingstarted (last accessed October 2, 2025).

65.    Additionally, a furnisher can manually correct a tradeline with a CRA other than the one that initiated a dispute by sending an AUD within e-OSCAR.

66.    Trans Union, Experian, and Equifax each require data furnishers that report to them respectively to register with and use e-OSCAR, and state that e-OSCAR is "in compliance with FCRA and Metro 2 standards." *See* https://www.transunion.com/data-reporting/support-teams    (last    accessed October 2, 2025).

## **The FCCPA**

67.    The FCCPA's goal is to "provide the consumer with the most protection possible." *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing Fla. Stat. § 559.552).

68.    The FCCPA provides that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." See Fla. Stat. § 559.72(9).

69.    "The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part." See Fla. Stat. §559.77(2).

70.    As a consumer, The Plaintiff has a private right of action against TimePayment, NCS, Columbia, Ideal, OIS, Bounce, and Launch pursuant to

Florida Statute §559.77(2), which provides that "[a]ny person who fails to comply with any provision of s. 559.72 is liable for actual damages and for additional statutory damages . . . not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the Plaintiff." (omissions added).

## FACTUAL ALLEGATIONS

71.    The Plaintiff is a documented victim of identity theft, having filed multiple Federal Trade Commission (FTC) Identity Theft Affidavits on March 29, 2024; April 24, 2024; May 16, 2024; July 30, 2024; October 28, 2024; and December 4, 2024, each affirming and explaining that the Plaintiff is a victim of identity theft and has suffered adverse consequences arising therefrom.

72.    The Plaintiff also lodged an Incident Report with the Orange County Sheriff's Office on January 10, 2025, in further support of his identity theft claims, thereby taking all reasonable steps to notify law enforcement authorities and relevant agencies of the fraudulent activities carried out in his name.

**Disputes with Equifax, TimePayment, NCS, and Columbia**

73.    On or about September 17, 2023, the Plaintiff received the investigation result conducted by Equifax regarding a disputed hard inquiry reported by ALLY FINANCIAL - INQUIRY DATE: June 19, 2023, wherein Equifax verified the said hard inquiry as an accurate and factual record. The said inquiry continued to be reported as accurate in the Plaintiff's subsequent credit reports dated March 2, 2025; April 17, 2025; and June 9, 2025.

74.    On or about September 17, 2023, the Plaintiff received the investigation result conducted by Equifax regarding a disputed hard inquiry reported by BENJI AUTO SALES 99 - INQUIRY DATE: 06/23/2023, wherein Equifax verified the said hard inquiry as an accurate and factual record. The said inquiry continued to be reported as accurate in the Plaintiff's subsequent credit reports dated March 2, 2025; April 17, 2025; and June 9, 2025.

75.    On or about September 17, 2023, the Plaintiff received the investigation result conducted by Equifax regarding a disputed hard inquiry reported by C&F FINANCE COMPANY - INQUIRY DATE: 06/09/2023, wherein Equifax verified the said hard inquiry as an accurate and factual record. The said inquiry continued to be reported as accurate in the Plaintiff's subsequent credit reports dated March 2, 2025, and April 17, 2025.

76.    On or about September 17, 2023, the Plaintiff received the investigation result conducted by Equifax regarding a disputed hard inquiry reported by C & F FINANCE COMPANY - INQUIRY DATE: 06/09/2023, wherein Equifax verified the said hard inquiry as an accurate and factual record. The said inquiry continued to be reported as accurate in the Plaintiff's subsequent credit reports dated March 2, 2025, and April 17, 2025.

77.    On or about September 17, 2023, the Plaintiff received the investigation result conducted by Equifax regarding a disputed hard inquiry reported BY C & F FINANCE COMPANY 99 - INQUIRY DATE: 06/20/2023, wherein Equifax verified the said hard inquiry as an accurate and factual record.

The said inquiry continued to be reported as accurate in the Plaintiff's subsequent credit reports dated March 2, 2025, April 17, 2025, and June 9, 2025.

78.    On or about September 17, 2023, the Plaintiff received the investigation result conducted by Equifax regarding a disputed hard inquiry reported by CAPITAL ONE - INQUIRY DATE: 06/20/2023, wherein Equifax verified the said hard inquiry as an accurate and factual record. Upon review of the credit report dated March 2, 2025, it was observed that the said hard inquiry had been deleted. Further on review of the credit report dated April, 17 , 2025 it reappeared.

79.    On or about September 17, 2023, the Plaintiff received the investigation result conducted by Equifax regarding a disputed hard inquiry reported by CBNA EIS/TDML - INQUIRY DATE: 06/16/2023 wherein Equifax verified the said hard inquiry as an accurate and factual record. The said inquiry continued to be reported as accurate in the Plaintiff's subsequent credit reports dated March 2, 2025, April 17, 2025, and June 9, 2025.

80.    On or about September 17, 2023, the Plaintiff received the investigation result conducted by Equifax regarding a disputed hard inquiry reported by COMENITYCAPITAL/FE21 EIS/TDML - INQUIRY DATE: 07/05/2023, wherein Equifax verified the said hard inquiry as an accurate and factual record. The said inquiry continued to be reported as accurate in the Plaintiff's subsequent credit reports dated March 2, 2025, April 17, 2025, and June 9, 2025.

81.    On or about September 17, 2023, the Plaintiff received the investigation result conducted by Equifax regarding a disputed hard inquiry reported by JACKSONVILLE OP AUTO099 - INQUIRY DATE: 06/24/2023, wherein Equifax verified the said hard inquiry as an accurate and factual record. The said inquiry continued to be reported as accurate in the Plaintiff's subsequent credit reports dated March 2, 2025, April 17, 2025, and June 9, 2025.

82.    On or about September 17, 2023, the Plaintiff received the investigation result conducted by Equifax regarding a disputed hard inquiry reported by LENTEGRITY LLC - INQUIRY DATE: 06/07/2023, wherein Equifax verified the said hard inquiry as an accurate and factual record. The said inquiry continued to be reported as accurate in the Plaintiff's subsequent credit reports dated March 2, 2025, and April 17, 2025.

83.    On or about September 17, 2023, the Plaintiff received the investigation result conducted by Equifax regarding a disputed hard inquiry reported by ONEMAIN - INQUIRY DATE: 06/07/2023, wherein Equifax verified the said hard inquiry as an accurate and factual record. The said inquiry continued to be reported as accurate in the Plaintiff's subsequent credit reports dated March 2, 2025, and April 17, 2025.

84.    On or about, December 6, 2023, the Plaintiff received the investigation result conducted by Equifax regarding a disputed tradeline reported by TIMEPAYMENT CORP., ACCOUNT NO. 1853, wherein Equifax verified the said tradeline as accurate.

85.     On or about, January 26, 2024, the Plaintiff received the investigation result conducted by Equifax regarding a disputed tradeline reported by NATIONAL CREDIT SYSTEMS INC - ACCOUNT NUMBER: 1593, wherein Equifax verified the said tradeline as accurate.

86.     On or about, March 20, 2024, the Plaintiff received the investigation result conducted by Equifax regarding a disputed tradeline reported by COLUMBIA DEBT RECOVERY LLC - GENESIS CREDIT MANAGEMENT LLC - COLLECTION ACCOUNT - ACCOUNT NUMBER: 4903, wherein Equifax verified the said tradeline as accurate.

87.     On or about February 15, 2025, the Plaintiff received the investigation result conducted by Equifax regarding a disputed hard inquiry reported by ALLY FINANCIAL99 EIS - INQUIRY DATE: JUNE 19, 2023, wherein Equifax verified the said hard inquiry as an accurate and factual record. Wherein in the credit report dated March 2, 2025, the said inquiry has been deleted. Subsequently the hard inquiry has reappeared in credit reports dated April 17, 2025, and June 9, 2025.

88.     On or about February 15, 2025, the Plaintiff received the investigation result conducted by Equifax regarding a disputed hard inquiry reported by BENJI AUTO SALES99 EIS - INQUIRY DATE: 06/23/2023, wherein Equifax verified the said hard inquiry as an accurate and factual record. The said inquiry continued to be reported as accurate in the Plaintiff's subsequent credit reports dated March 2, 2025, April 17, 2025, and June 9, 2025.

89.     On or about February 15, 2025, the Plaintiff received the investigation result conducted by Equifax regarding a disputed hard inquiry reported by C&F FINANCE COMPANY99 EIS - INQUIRY DATE: 06/09/2023 wherein Equifax verified the said hard inquiry as an accurate and factual record. The said inquiry continued to be reported as accurate in the Plaintiff's subsequent credit reports dated March 2, 2025, and April 17, 2025.

90.     On or about February 15, 2025, the Plaintiff received the investigation result conducted by Equifax regarding a disputed hard inquiry reported by C & F FINANCE COMPANY99 EIS - INQUIRY DATE: 06/09/2023 wherein Equifax verified the said hard inquiry as an accurate and factual record. The said inquiry continued to be reported as accurate in the Plaintiff's subsequent credit reports dated March 2, 2025, and April 17, 2025.

91.     On or about February 15, 2025, the Plaintiff received the investigation result conducted by Equifax regarding a disputed hard inquiry reported by CAP ONE VIA DEALER99 EIS INQUIRY DATE: JUNE 20, 2023, wherein Equifax verified the said hard inquiry as an accurate and factual record. The said inquiry continued to be reported as accurate in the Plaintiff's subsequent credit reports dated March 2, 2025, April 17, 2025, and June 9, 2025.

92.     On or about February 15, 2025, the Plaintiff received the investigation result conducted by Equifax regarding a disputed hard inquiry reported by CBNA EIS - INQUIRY DATE: 06/16/2023, wherein Equifax verified the said hard inquiry as an accurate and factual record. The said inquiry continued to be reported as

accurate in the Plaintiff's subsequent credit reports dated March 2, 2025, April 17, 2025, and June 9, 2025.

93.    On or about February 15, 2025, the Plaintiff received the investigation result conducted by Equifax regarding a disputed hard inquiry reported by COMENITYCAPITAL/FE21CC EIS - INQUIRY DATE: 07/05/2023, wherein Equifax verified the said hard inquiry as an accurate and factual record. The said inquiry continued to be reported as accurate in the Plaintiff's subsequent credit reports dated March 2, 2025, April 17, 2025, and June 9, 2025.

94.    On or about February 15, 2025, the Plaintiff received the investigation result conducted by Equifax regarding a disputed hard inquiry reported by JACKSONVILLE OP AUTOMOTIVE99 EIS  - INQUIRY DATE: 06/24/2023, wherein Equifax verified the said hard inquiry as an accurate and factual record. The said inquiry continued to be reported as accurate in the Plaintiff's subsequent credit reports dated March 2, 2025, April 17, 2025, and June 9, 2025.

95.    On or about February 15, 2025, the Plaintiff received the investigation result conducted by Equifax regarding a disputed hard inquiry reported by LENTEGRITY LLC99 EIS - INQUIRY DATE: 06/07/2023, wherein Equifax verified the said hard inquiry as an accurate and factual record. The said inquiry continued to be reported as accurate in the Plaintiff's subsequent credit reports dated March 2, 2025, and April 17, 2025.

96.    On or about February 15, 2025, the Plaintiff received the investigation result conducted by Equifax regarding a disputed hard inquiry reported by

ONEMAIN EIS - INQUIRY DATE: 06/07/2023, wherein Equifax verified the said hard inquiry as an accurate and factual record. The said inquiry continued to be reported as accurate in the Plaintiff's subsequent credit reports dated March 2, 2025, and April 17, 2025.

97.    The Plaintiff mailed a dispute letter to Equifax which was received by Equifax on May 5, 2025, disputing the hard inquiry reported by ALLY FINANCIAL - INQUIRY DATE: JUNE 19, 2023. In response, on May 10,2025, Equifax requested the Plaintiff to provide additional identity documents, which had already been duly submitted by the Plaintiff. However, no investigation results were thereafter furnished by Equifax. Upon reviewing the subsequent credit report dated June 9, 2025, the Plaintiff noted that the said hard inquiry continued to appear on the report.

98.    The Plaintiff mailed a dispute letter to Equifax which was received by Equifax on May 5, 2025, disputing the hard inquiry reported by BENJI AUTO SALES - Inquiry Date: June 23, 2023. In response, on May 10,2025, Equifax requested the Plaintiff to provide additional identity documents, which had already been duly submitted by the Plaintiff. However, no investigation results were thereafter furnished by Equifax. Upon reviewing the subsequent credit report dated June 9, 2025, the Plaintiff noted that the said hard inquiry continued to appear on the report.

99.    The Plaintiff mailed a dispute letter to Equifax which was received by Equifax on May 5, 2025, disputing the hard inquiry reported by C & F FINANCE

COMPANY - Inquiry Date: June 9, 2023. In response, on May 10,2025, Equifax requested the Plaintiff to provide additional identity documents, which had already been duly submitted by the Plaintiff. However, no investigation results were thereafter furnished by Equifax.

100.   The Plaintiff mailed a dispute letter to Equifax which was received by Equifax on May 5, 2025, disputing the hard inquiry reported by C&F FINANCE COMPANY - Inquiry Date: June 20, 2023. In response, on May 10,2025, Equifax requested the Plaintiff to provide additional identity documents, which had already been duly submitted by the Plaintiff. However, no investigation results were thereafter furnished by Equifax. Upon reviewing the subsequent credit report dated June 9, 2025, the Plaintiff noted that the said hard inquiry continued to appear on the report.

101.   The Plaintiff mailed a dispute letter to Equifax which was received by Equifax on May 5, 2025, disputing the hard inquiry reported by CBNA - Inquiry Date: June 16, 2023. In response, on May 10,2025, Equifax requested the Plaintiff to provide additional identity documents, which had already been duly submitted by the Plaintiff. However, no investigation results were thereafter furnished by Equifax. Upon reviewing the subsequent credit report dated June 9, 2025, the Plaintiff noted that the said hard inquiry continued to appear on the report.

102.   The Plaintiff mailed a dispute letter to Equifax which was received by Equifax on May 5, 2025, disputing the hard inquiry reported by COMENITYCAPITAL/FE21CC - Inquiry Date: July 5, 2023. In response, on May

10,2025, Equifax requested the Plaintiff to provide additional identity documents, which had already been duly submitted by the Plaintiff. However, no investigation results were thereafter furnished by Equifax. Upon reviewing the subsequent credit report dated June 9, 2025, the Plaintiff noted that the said hard inquiry continued to appear on the report.

103.    The Plaintiff mailed a dispute letter to Equifax which was received by Equifax on May 5, 2025, disputing the hard inquiry reported by JACKSONVILLE OP AUTOMOTIVE - Inquiry Date: June 24, 2023. In response, on May 10,2025, Equifax requested the Plaintiff to provide additional identity documents, which had already been duly submitted by the Plaintiff. However, no investigation results were thereafter furnished by Equifax. Upon reviewing the subsequent credit report dated June 9, 2025, the Plaintiff noted that the said hard inquiry continued to appear on the report.

104.    The Plaintiff mailed a dispute letter to Equifax which was received by Equifax on May 5, 2025, disputing the hard inquiry reported by LENTEGRITY LLC - Inquiry Date: June 7, 2023. In response, on May 10,2025, Equifax requested the Plaintiff to provide additional identity documents, which had already been duly submitted by the Plaintiff. However, no investigation results were thereafter furnished by Equifax.

105.    The Plaintiff mailed a dispute letter to Equifax which was received by Equifax on May 5, 2025, disputing the hard inquiry reported by ONEMAIN - Inquiry Date: June 7, 2023. In response, on May 10,2025, Equifax requested the

Plaintiff to provide additional identity documents, which had already been duly submitted by the Plaintiff. However, no investigation results were thereafter furnished by Equifax.

106.    The Plaintiff mailed a dispute letter to Equifax which was received by Equifax on September 18, 2025, disputing the hard inquiry reported by ALLY FINANCIAL - Inquiry Date: June 19, 2023. In response, on September 22, 2025, Equifax issued a block refusal letter, a letter explaining the remedying effects of the identity theft and further requested the Plaintiff to provide additional identity documents. Despite the Plaintiff's compliance, no investigation results were furnished by Equifax. Subsequently, on September 24, 2025, Equifax again issued a block refusal communication. Thereafter, on October 17, 2025, once more Equifax provided a block refusal letter, repeating its prior request for identity documents and enclosing the same explanatory letter regarding identity theft remedies.

107.    The Plaintiff mailed a dispute letter to Equifax which was received by Equifax on September 18, 2025, disputing the hard inquiry reported by BENJI AUTO SALES - Inquiry Date: June 23, 2023. In response, on September 22, 2025, Equifax issued a block refusal letter, a letter explaining the remedying effects of the identity theft and further requested the Plaintiff to provide additional identity documents. Despite the Plaintiff's compliance, no investigation results were furnished by Equifax. Subsequently, on September 24, 2025, Equifax again issued a block refusal communication. Thereafter, on October 17, 2025, once more

Equifax provided a block refusal letter, repeating its prior request for identity documents and enclosing the same explanatory letter regarding identity theft remedies.

108.    The Plaintiff mailed a dispute letter to Equifax which was received by Equifax on September 18, 2025, disputing the hard inquiry reported by C&F FINANCE COMPANY - Inquiry Date: June 20, 2023. In response, on September 22, 2025, Equifax issued a block refusal letter, a letter explaining the remedying effects of the identity theft and further requested the Plaintiff to provide additional identity documents. Despite the Plaintiff's compliance, no investigation results were furnished by Equifax. Subsequently, on September 24, 2025, Equifax again issued a block refusal communication. Thereafter, on October 17, 2025, once more Equifax provided a block refusal letter, repeating its prior request for identity documents and enclosing the same explanatory letter regarding identity theft remedies.

109.    The Plaintiff mailed a dispute letter to Equifax which was received by Equifax on September 18, 2025, disputing the hard inquiry reported by CAP ONE VIA DEALER - Inquiry Date: June 20, 2023. In response, on September 22, 2025, Equifax issued a block refusal letter, a letter explaining the remedying effects of the identity theft and further requested the Plaintiff to provide additional identity documents. Despite the Plaintiff's compliance, no investigation results were furnished by Equifax. Subsequently, on September 24, 2025, Equifax again issued a block refusal communication. Thereafter, on October 17, 2025, once more

Equifax provided a block refusal letter, repeating its prior request for identity documents and enclosing the same explanatory letter regarding identity theft remedies.

110.    The Plaintiff mailed a dispute letter to Equifax which was received by Equifax on September 18, 2025, disputing the hard inquiry reported by CBNA - Inquiry Date: June 16, 2023. In response, on September 22, 2025, Equifax issued a block refusal letter, a letter explaining the remedying effects of the identity theft and further requested the Plaintiff to provide additional identity documents. Despite the Plaintiff's compliance, no investigation results were furnished by Equifax. Subsequently, on September 24, 2025, Equifax again issued a block refusal communication. Thereafter, on October 17, 2025, once more Equifax provided a block refusal letter, repeating its prior request for identity documents and enclosing the same explanatory letter regarding identity theft remedies.

111.    The Plaintiff mailed a dispute letter to Equifax which was received by Equifax on September 18, 2025, disputing the hard inquiry reported by COMENITYCAPITAL/FE21CC - Inquiry Date: July 5, 2023. In response, on September 22, 2025, Equifax issued a block refusal letter, a letter explaining the remedying effects of the identity theft and further requested the Plaintiff to provide additional identity documents. Despite the Plaintiff's compliance, no investigation results were furnished by Equifax. Subsequently, on September 24, 2025, Equifax again issued a block refusal communication. Thereafter, on October 17, 2025, once more Equifax provided a block refusal letter, repeating its prior request for identity

documents and enclosing the same explanatory letter regarding identity theft remedies.

112.    The Plaintiff mailed a dispute letter to Equifax which was received by Equifax on September 18, 2025, disputing the hard inquiry reported by JACKSONVILLE OP AUTOMOTIVE - Inquiry Date: June 24, 2023. In response, on September 22, 2025, Equifax issued a block refusal letter, a letter explaining the remedying effects of the identity theft and further requested the Plaintiff to provide additional identity documents. Despite the Plaintiff's compliance, no investigation results were furnished by Equifax. Subsequently, on September 24, 2025, Equifax again issued a block refusal communication. Thereafter, on October 17, 2025, once more Equifax provided a block refusal letter, repeating its prior request for identity documents and enclosing the same explanatory letter regarding identity theft remedies.

113.    Remarkably, the Plaintiff disputed a esusu/harb - account number tradeline with partial account number 6311 in early December of 2023; a nationalcr - collection account – with partial account number 4715, in late December of 2023; a nationalcr - collection account – with partial account number 1050 and nationalcr - collection account - account number: 1593, in January of 2024; a l j ross & associates - collection account – with partial account number 3255, in Feb of 2024; a sequium asset solutions - collection account – with partial account number 4590; a amsher collection services – with partial account number 5358 - collection account in july of 2024; a columbia debt recovery llc – with partial

account number: 9092 - collection account in january of 2025; a procollect – partial account number 5884 - collection account with; a columbia debt recovery llc – with partial account number: 8316 - collection account in january of 2025; a bounce ai – with partial account number: 8517 - collection account in January of 2025; all of which were removed. How Equifax decided to remove these identity theft account, while leaving the other disputed identity theft accounts, signals their total reliance on and parroting of the furnisher of the information and lack of any meaningful investigation.

## Disputes with Experian, Launch, Columbia, TimePayment, Bounce, and OIS

114.    On or about, April 2,2024 the Plaintiff received the investigation result conducted by Experian regarding a disputed tradeline reported by ASCENT FUNDING / LAUNCH - ACCOUNT NUMBER: 48 - STATUS: ACCOUNT CHARGED OFF $5,704 WRITTEN OFF - PAYMENT HISTORT: AUG 2023 RATING 30 , SEP 2023 RATING 60 , OCT 2023 RATING 90 , NOV 2023 RATING 120 , DEC 2023 RATING 150 AND JAN 2024 RATING CO (CHARGE OFF), wherein Experian verified the said tradeline remained unchanged.

115.    On or about, April 2,2024 the Plaintiff received the investigation result conducted by Experian regarding a disputed tradeline reported by COLUMBIA DEBT RECOVERY - ACCOUNT NUMBER: PRS0GS - COLLECTION ACCOUNT $399 PAST DUE AS OF MAR 2024 - PAYMENT HISTORY: MAR 2024

RATING C (COLLECTIONS), wherein Experian verified the said tradeline remained unchanged.

116.    On or about, April 2,2024 the Plaintiff received the investigation result conducted by Experian regarding a disputed tradeline reported by TIMEPAYMENT CORP - ACCOUNT NUMBER: 5039 - ACCOUNT TYPE: LEASE - STATUS: OPEN $1,073 PAST DUE AS ON FEB 2024 - PAYMENT HISTORY: AUG 2023 RATING 30 , SEP 2023 RATING 60 , OCT 2023 RATING 90 , NOV 2023 RATING 90 , DEC 2023 RATING 120 , JAN 2024 RATING 150 AND FEB 2024 RATIING 180, wherein Experian verified the said tradeline remained unchanged.

117.    On or about, November 20, 2024, the Plaintiff received the investigation result conducted by Experian regarding a disputed tradeline reported by COLUMBIA DEBT RECOVERY - ACCOUNT NUMBER: PRS0GS, wherein Experian verified the said tradeline is accurate.

118.    On or about, December 9, 2024, the Plaintiff received the investigation result conducted by Experian regarding a disputed soft inquiry by BOUNCE AI - INQUIRY DATE: 08/14/2024, wherein Experian deleted the said hard inquiry. Subsequently after reviewing the credit reports dated April 17, 2025; June 9, 2025 and October 29, 2025, it reappears as an inquiry dated March 21, 2025.

119.    On or about, December 26, 2024, the Plaintiff received the investigation result conducted by Experian regarding a disputed tradeline reported

30

by BOUNCE AI INC - ACCOUNT NUMBER: BA1297, wherein Experian verified the said tradeline is accurate.

120. On or about, December 26, 2024, the Plaintiff received the investigation result conducted by Experian regarding a disputed tradeline reported by COLUMBIA DEBT RECOVERY - ACCOUNT NUMBER: PRS0GS, wherein Experian verified the said tradeline is accurate.

121. Remarkably, in May of 2024, the consumer disputed with Experian bounce ai - account number: 8517 - collection account; columbia debt recovery - account number: PRS0GS; In June of 2024 national credit system - account number: 542022; in October of 2024 transworld system inc - account number: 16996; in October of 2024 procollect,inc - account number: 517600; and in September of 2025 procollect,inc - account number: 517600. All of which were removed. How Experian decided to remove these identity theft accounts, while leaving the other disputed identity theft accounts, signals their total reliance on and parroting of the furnisher of the information and lack of any meaningful investigation.

122. On or about April 16, 2025, the Plaintiff received the investigation result conducted by Experian, regarding a disputed address reported as 6009 WINEGARD RD APTC ORLANDO FL- 32809-4840 - ADDRESS ID: 0070075584 - DESCRIPTION: APARTMENT COMPLEX, wherein Experian verified the said address is accurate. This is a fraudulent address. The said address continued to be reported as accurate in the Plaintiff's subsequent credit report dated April 17, 2025.

31

123.    On or about April 16, 2025, the Plaintiff received the investigation result conducted by Experian, regarding a disputed hard inquiry reported by CAP ONE AUTO FIN VIA DEALER - INQUIRY DATED: 06/20/2023, wherein Experian verified the said hard inquiry is accurate. The said hard inquiry continued to be reported as accurate in the Plaintiff's subsequent credit report dated April 17, 2025.

124.    On or about April 16, 2025, the Plaintiff received the investigation result conducted by Experian, regarding a disputed hard inquiry reported by CREDIT ONE BANK - INQUIRY DATE: JUL 27, 2023, wherein Experian verified the said hard inquiry is accurate. The said hard inquiry continued to be reported as accurate in the Plaintiff's subsequent credit report dated April 17, 2025.

125.    On or about April 16, 2025, the Plaintiff received the investigation result conducted by Experian, regarding a disputed hard inquiry reported by EXETER FINANCE LLC/WCG - Inquiry dated:06/08/2023, wherein Experian verified the said hard inquiry is accurate. The said hard inquiry continued to be reported as accurate in the Plaintiff's subsequent credit report dated April 17, 2025.

126.    On or about April 16, 2025, the Plaintiff received the investigation result conducted by Experian, regarding a disputed hard inquiry reported by GOLF ACCEPTAN CE LLC - Inquiry dated: 06/07/2023, wherein Experian verified the said hard inquiry is accurate. The said hard inquiry continued to be reported as accurate in the Plaintiff's subsequent credit report dated April 17, 2025, and June 9, 2025.

127.   On or about April 16, 2025, the Plaintiff received the investigation result conducted by Experian, regarding a disputed hard inquiry reported by GOLF ACCEPTANCE LLC - INQUIRY DATE: JUL 24, 2023, wherein Experian verified the said hard inquiry is accurate. The said hard inquiry continued to be reported as accurate in the Plaintiff's subsequent credit report dated April 17, 2025.

128.   On or about April 16, 2025, the Plaintiff received the investigation result conducted by Experian, regarding a disputed hard inquiry reported by HYUNDAI CAPITAL AMERICA - INQUIRY DATE SEP 25, 2023, wherein Experian verified the said hard inquiry is accurate. The said hard inquiry continued to be reported as accurate in the Plaintiff's subsequent credit report dated April 17, 2025, and June 9, 2025.

129.   On or about April 16, 2025, the Plaintiff received the investigation result conducted by Experian, regarding a disputed hard inquiry reported by HYUNDAI CAPITAL AMERICA - INQUIRY DATE: SEP 23, 2025, wherein Experian verified the said hard inquiry is accurate. The said hard inquiry continued to be reported as accurate in the Plaintiff's subsequent credit report dated April 17, 2025, and June 9, 2025.

130.   On or about April 16, 2025, the Plaintiff received the investigation result conducted by Experian, regarding a disputed hard inquiry reported by NCC INC/KlA OF ORANGE PAR - Inquiry dated: 06/24/2023, wherein Experian verified the said hard inquiry is accurate. The said hard inquiry continued to be reported as accurate in the Plaintiff's subsequent credit report dated April 17, 2025.

33

131.   On or about April 16, 2025, the Plaintiff received the investigation result conducted by Experian, regarding a disputed hard inquiry reported by NOWCOM/ GUGABELE 7 - Inquiry dated: 06/07/2023, wherein Experian verified the said hard inquiry is accurate. The said hard inquiry continued to be reported as accurate in the Plaintiff's subsequent credit report dated April 17, 2025.

132.   On or about April 16, 2025, the Plaintiff received the investigation result conducted by Experian, regarding a disputed hard inquiry reported by NOWCOM/ GUGABELE 7 - Inquiry dated: 06/09/2023, wherein Experian verified the said hard inquiry is accurate. The said hard inquiry continued to be reported as accurate in the Plaintiff's subsequent credit report dated April 17, 2025.

133.   On or about April 16, 2025, the Plaintiff received the investigation result conducted by Experian, regarding a disputed hard inquiry reported by NOWCOM/ URRAS ENTERPRICES - Inquiry dated: 06/30/2023, wherein Experian verified the said hard inquiry is accurate. The said hard inquiry continued to be reported as accurate in the Plaintiff's subsequent credit report dated April 17, 2025.

134.   On or about April 16, 2025, the Plaintiff received the investigation result conducted by Experian, regarding a disputed hard inquiry reported by NOWCOM/ VIP AUTO ENTERPRI - Inquiry dated: 06/20/2023, wherein Experian verified the said hard inquiry is accurate. The said hard inquiry continued to be reported as accurate in the Plaintiff's subsequent credit report dated April 17, 2025.

135.   On or about April 16, 2025, the Plaintiff received the investigation result conducted by Experian, regarding a disputed hard inquiry reported by NOWCOM/1 DRIVE MOTORSPORT - Inquiry dated: 06/07/2023, wherein Experian verified the said hard inquiry is accurate. The said hard inquiry continued to be reported as accurate in the Plaintiff's subsequent credit report dated April 17, 2025.

136.   On or about April 16, 2025, the Plaintiff received the investigation result conducted by Experian, regarding a disputed hard inquiry reported by NOWCOM/1 ON MOTORS AUTO S - Inquiry dated: 07/24/2023, wherein Experian verified the said hard inquiry is accurate. The said hard inquiry continued to be reported as accurate in the Plaintiff's subsequent credit report dated April 17, 2025.

137.   On or about April 16, 2025, the Plaintiff received the investigation result conducted by Experian, regarding a disputed tradeline reported by ONLINE INFORMATION SERVI - ACCOUNT NUMBER 12122360000389472 - COLLECTION ACCOUNT, wherein Experian verified the said tradeline to be accurate. The said tradeline continued to be reported as accurate in the Plaintiff's subsequent credit report dated April 17, 2025, and June 9, 2025.

138.   On or about April 16, 2025, the Plaintiff received the investigation result conducted by Experian, regarding a disputed soft inquiry reported by ONLINE INFORMATION SERVI - INQUIRY DATE: 02/25/2025, wherein Experian verified the said soft inquiry is accurate. The said soft inquiry continued

to be reported as accurate in the Plaintiff's subsequent credit report dated April 17, 2025, and June 9, 2025.

139.   The Plaintiff mailed a dispute letter to Experian which was received by Experian on May 5, 2025, disputing the fraudulent address as 6009 WINEGARD RD APTC ORLANDO FL- 32809-4840 - ADDRESS ID: 0070075584 - DESCRIPTION: APARTMENT COMPLEX, in response, on May 12, 2025 and May 17, 2025, Experian requested the Plaintiff to provide additional identity documents, which had already been duly submitted by the Plaintiff. However, no investigation results were thereafter furnished by Experian.

140.   The Plaintiff mailed a dispute letter to Experian which was received by Experian on May 5, 2025, disputing the hard inquiry reported by CAP ONE AUTO FIN VIA DEALER - Inquiry dated: 06/20/2023. In response, on May 12, 2025 and May 17, 2025, Experian requested the Plaintiff to provide additional identity documents, which had already been duly submitted by the Plaintiff. However, no investigation results were thereafter furnished by Experian.

141.   The Plaintiff mailed a dispute letter to Experian which was received by Experian on May 5, 2025, disputing the hard inquiry reported by CREDIT ONE BANK - INQUIRY DATED: 07/27/2023. In response, on May 12, 2025 and May 17, 2025, Experian requested the Plaintiff to provide additional identity documents, which had already been duly submitted by the Plaintiff. However, no investigation results were thereafter furnished by Experian.

142.   The Plaintiff mailed a dispute letter to Experian which was received by Experian on May 5, 2025, disputing the hard inquiry reported by EXETER FINANCE LLC/WCG - Inquiry dated:06/08/2023. In response, on May 12, 2025 and May 17, 2025, Experian requested the Plaintiff to provide additional identity documents, which had already been duly submitted by the Plaintiff. However, no investigation results were thereafter furnished by Experian.

143.   The Plaintiff mailed a dispute letter to Experian which was received by Experian on May 5, 2025, disputing the hard inquiry reported by GOLF ACCEPTAN CE LLC - INQUIRY DATED: 06/07/2023. In response, on May 12, 2025 and May 17, 2025, Experian requested the Plaintiff to provide additional identity documents, which had already been duly submitted by the Plaintiff. However, no investigation results were thereafter furnished by Experian. The said hard inquiry continued to be reported as accurate in the Plaintiff's subsequent credit report dated June 9, 2025.

144.   The Plaintiff mailed a dispute letter to Experian which was received by Experian on May 5, 2025, disputing the hard inquiry reported by GOLF ACCEPTANCE LLC - INQUIRY DATED: 07/24/2023. In response, on May 12, 2025 and May 17, 2025, Experian requested the Plaintiff to provide additional identity documents, which had already been duly submitted by the Plaintiff. However, no investigation results were thereafter furnished by Experian.

145.   The Plaintiff mailed a dispute letter to Experian which was received by Experian on May 5, 2025, disputing the hard inquiry reported by NCC INC/KlA

OF ORANGE PAR - Inquiry dated: 06/24/2023. In response, on May 12, 2025 and May 17, 2025, Experian requested the Plaintiff to provide additional identity documents, which had already been duly submitted by the Plaintiff. However, no investigation results were thereafter furnished by Experian.

146.   The Plaintiff mailed a dispute letter to Experian which was received by Experian on May 5, 2025, disputing the hard inquiry reported by NOWCOM/ GUGABELE 7 - Inquiry dated: 06/07/2023. In response, on May 12, 2025 and May 17, 2025, Experian requested the Plaintiff to provide additional identity documents, which had already been duly submitted by the Plaintiff. However, no investigation results were thereafter furnished by Experian.

147.   The Plaintiff mailed a dispute letter to Experian which was received by Experian on May 5, 2025, disputing the hard inquiry reported by NOWCOM/ GUGABELE 7 - Inquiry dated: 06/09/2023. In response, on May 12, 2025 and May 17, 2025, Experian requested the Plaintiff to provide additional identity documents, which had already been duly submitted by the Plaintiff. However, no investigation results were thereafter furnished by Experian.

148.   The Plaintiff mailed a dispute letter to Experian which was received by Experian on May 5, 2025, disputing the hard inquiry reported by NOWCOM/ URRAS ENTERPRICES - Inquiry dated: 06/30/2023. In response, on May 12, 2025 and May 17, 2025, Experian requested the Plaintiff to provide additional identity documents, which had already been duly submitted by the Plaintiff. However, no investigation results were thereafter furnished by Experian.

149.    The Plaintiff mailed a dispute letter to Experian which was received by Experian on May 5, 2025, disputing the hard inquiry reported by NOWCOM/ VIP AUTO ENTERPRI - Inquiry dated: 06/20/2023. In response, on May 12, 2025 and May 17, 2025, Experian requested the Plaintiff to provide additional identity documents, which had already been duly submitted by the Plaintiff. However, no investigation results were thereafter furnished by Experian.

150.    The Plaintiff mailed a dispute letter to Experian which was received by Experian on May 5, 2025, disputing the hard inquiry reported by NOWCOM/ WESTLAKE FINANCIA - Inquiry dated: 07/11/2023. In response, on May 12, 2025 and May 17, 2025, Experian requested the Plaintiff to provide additional identity documents, which had already been duly submitted by the Plaintiff. However, no investigation results were thereafter furnished by Experian.

151.    The Plaintiff mailed a dispute letter to Experian which was received by Experian on May 5, 2025, disputing the hard inquiry reported by NOWCOM/ WESTLAKE FINANCIA - Inquiry dated: 07/11/2023. In response, on May 12, 2025 and May 17, 2025, Experian requested the Plaintiff to provide additional identity documents, which had already been duly submitted by the Plaintiff. However, no investigation results were thereafter furnished by Experian.

152.    The Plaintiff mailed a dispute letter to Experian which was received by Experian on May 5, 2025, disputing the hard inquiry reported by NOWCOM/1 DRIVE MOTORSPORT - Inquiry dated: 06/07/2023. In response, on May 12, 2025 and May 17, 2025, Experian requested the Plaintiff to provide additional

identity documents, which had already been duly submitted by the Plaintiff. However, no investigation results were thereafter furnished by Experian.

153.    The Plaintiff mailed a dispute letter to Experian which was received by Experian on May 5, 2025, disputing the hard inquiry reported by NOWCOM/1 ON MOTORS AUTO S - INQUIRY DATED: 07/24/2023. In response, on May 12, 2025 and May 17, 2025, Experian requested the Plaintiff to provide additional identity documents, which had already been duly submitted by the Plaintiff. However, no investigation results were thereafter furnished by Experian.

**Disputes With Trans Union and Ideal**

154.    The Plaintiff mailed a dispute letter to TransUnion which was received by TransUnion on May 6, 2025, disputing the tradeline GENESIS CREDIT MANAGEMENT LLC - ACCOUNT #PRS0GS1431000438, despite the Plaintiff's compliance, no investigation results were furnished by TransUnion. Subsequently, on September 23, 2025, TransUnion requested for identity documents.

155.    The Plaintiff mailed a dispute letter to TransUnion which was received by TransUnion on May 6, 2025, disputing the tradeline IDEAL COLLECTION SERVICE - ACCOUNT #230904172, in response, TransUnion on May 14, 2025, verified the said tradeline as accurate. Subsequently, on September 23, 2025, TransUnion requested for identity documents. The said tradeline continued to be reported as accurate in the Plaintiff's subsequent credit report dated November 11, 2025

156.    The Plaintiff mailed a dispute letter to TransUnion which was received by TransUnion on May 6, 2025, disputing the tradeline TRANSWORLD SYSTEMS - ACCOUNT #16996, despite the Plaintiff's compliance, no investigation results were furnished by TransUnion. Subsequently, on September 23, 2025, TransUnion requested for identity documents.

157.    Defendants' derogatory and inaccurate reporting the above-described fraudulent tradelines and inquiries on Plaintiff's credit reports negatively reflects upon Plaintiff's financial obligations, credit score and credit worthiness to existing and potential creditors.

158.    Courts have regularly held that allegations of lower credit scores, taken as true, are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III. *See Pedro v. Equifax, Inc.*, 868 F.3d 1275 (11th Cir. 2017) ("[H]er credit score dropped 100 points as a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); *See Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583 (7th Cir. 2016) (standing where Plaintiffs alleged that they "have suffered damage to their credit and been forced to pay Ocwen greater payments and a higher interest rate"); *See Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691 (N.D. Ill. 2016) ("a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing"); *See Binns v. Ocwen Loan Servicing, LLC*, No. 14- 01764, 2015 U.S. Dist. LEXIS 132743, 2015 WL 5785693, at *9 (S.D. Ind. Sept. 30, 2015) ("injuries to Plaintiffs' credit scores and reputations

41

were considered intangible harms"); *See Rothman v. U.S. Bank Nat'l Ass'n*, No. 13-03381, 2014 U.S. Dist. LEXIS 141100, 2014 WL 4966907, at *5 (N.D. Cal. Oct. 3, 2014) ("Injury to a credit score is sufficient to constitute 'actual damages'"); *See Green v. RentGrow, Inc.*, No. 2:16cv421, 2016 U.S. Dist. LEXIS 166229 ("A decrease in credit score may still establish an injury in fact sufficient to confer standing"); *See Adams v. Fifth Third Bank*, No. 3:16-CV-00218-TBR, 2017 U.S. Dist. LEXIS 18932 (W.D. Ky. Feb. 9, 2017) ("Plaintiffs' allegations of lower credit scores ... are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."); and *See Coulbertson v. Experian Info. Sols., Inc.*, No. 16-cv-05672-RS, 2017 U.S. Dist. LEXIS 69484 (N.D. Cal. Mar. 24, 2017) ("At a minimum, Coulbertson has alleged a sufficient injury-in-fact through her claim that her credit score suffered as a result of the credit report she disputes").

## VIOLATIONS OF 15 U.S.C. §1681c-2
## AGAINST TRANS UNION

159.   Plaintiff incorporates by reference paragraph 1, 5, 6, 8, 9, 28, 30-66, 71, 72, and 154-158 as if fully stated herein.

160.   During the relevant timeframe, Trans Union received Plaintiff's disputes which requested a block of the fraudulent information.

161.   Plaintiff disputed the information on his Trans Union credit report, identified himself, advised Trans Union of the information being fraudulent, furnished Trans Union with a copy of his police report and requested that Trans Union block the fraudulent information.

162. Rather than block the fraudulent information, Trans Union negligently and willfully disregarded its obligations under the FCRA by merely seeking verification of the disputed information from the furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of Section 1681c-2.

163. Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

164. Alternatively, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST TRANS UNION

165. Plaintiff incorporates by reference paragraphs 1, 5, 6, 8, 9, 28, 30-66, 71, 72, and 154-158 as if fully stated herein.

166.    During the relevant time frame, Trans Union received Plaintiff's disputes which requested that the fraudulent information be removed from his credit file.

167.    Trans Union violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

168.    Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

169.    Alternatively, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST TRANS UNION

170.    Plaintiff incorporates by reference paragraphs 1, 5, 6, 8, 9, 28, 30-66, 71, 72, and 154-158 as if fully stated herein.

171.    Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the

preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

172.    After receiving Plaintiff's disputes, Trans Union was placed on notice that it was reporting fraudulent information, yet Trans Union continues to include the fraudulent information in Plaintiff's credit file.

173.    Trans Union's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

174.    In the alternative, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## VIOLATIONS OF 15 U.S.C. §1681c-2
## AGAINST EXPERIAN

175.    Plaintiff incorporates by reference paragraphs 1, 5, 6, 10, 11, 28, 30-66, 71, 72, 114-153,157, and 158 as if fully stated herein.

176.    During the relevant timeframe, Experian received Plaintiff's disputes which requested a block of the fraudulent information.

177.    Plaintiff disputed the information on his Experian credit report, identified himself, advised Experian of the information being fraudulent, furnished Experian with a copy of his police report, and requested that Experian block the fraudulent information.

178.    Rather than block the fraudulent information, Experian negligently and willfully disregarded its obligations under the FCRA by merely seeking verification of the disputed information from the furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of Section 1681c-2.

179.    Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

180.    Alternatively, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST EXPERIAN

181.    Plaintiff incorporates by reference paragraphs 1, 5, 6, 10, 11, 28, 30-66, 71, 72, 114-153, 157, and 158 as if fully stated herein.

182.    During the relevant time frame, Experian received Plaintiff's disputes which requested that the fraudulent information be removed from his credit file.

183.    Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

184.    Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

185.    Alternatively, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## VIOLATIONS OF 15 U.S.C. §1681e(b)
## AGAINST EXPERIAN

186.    Plaintiff incorporates by reference paragraphs 1, 5, 6, 10, 11, 28, 30-66, 71, 72, 114-153, 157, and 158 as if fully stated herein.

187.    Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

188.    After receiving Plaintiff's disputes, Experian was placed on notice that it was reporting fraudulent information, yet Experian continues to include the fraudulent information in Plaintiff's credit file.

189.    Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

190.    In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances

## VIOLATIONS OF 15 U.S.C. §1681c-2 AGAINST EQUIFAX

191.    Plaintiff incorporates by reference paragraphs 1, 5, 6, 12, 13, 28, 30-66, 71-113, 157, and 158 as if fully stated herein.

192.    During the relevant timeframe, Equifax received Plaintiff's disputes which requested a block of the fraudulent information.

193.    Plaintiff disputed the information on his Equifax credit report, identified himself, advised Equifax of the information being fraudulent, furnished Equifax with a copy of his police report, and requested that Equifax block the fraudulent information.

194.    Rather than block the fraudulent information, Equifax negligently and willfully disregarded its obligations under the FCRA by merely seeking verification of the disputed information from the furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of Section 1681c-2.

195.    Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

196.    Alternatively, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

49

## VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST EQUIFAX

197.    Plaintiff incorporates by reference paragraphs 1, 5, 6, 12, 13, 28, 30-66, 71-113, 157, and 158 as if fully stated herein.

198.    During the relevant time frame, Equifax received Plaintiff's disputes which requested that the fraudulent information be removed from his credit file.

199.    Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

200.    Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

201.    Alternatively, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## VIOLATIONS OF 15 U.S.C. §1681e(b)
## AGAINST EQUIFAX

202.    Plaintiff incorporates by reference paragraphs 1, 5, 6, 12, 13, 28, 30-66, 71-113, 157, and 158 as if fully stated herein.

203.    Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

204.    After receiving Plaintiff's disputes, Equifax was placed on notice that it was reporting fraudulent information, yet Equifax continues to include the fraudulent information in Plaintiff's credit file.

205.    Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

206.    In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## VIOLATIONS OF 15 U.S.C. §1681s-2(b)
## AGAINST TIMEPAYMENT CORP.

207.    Plaintiff incorporates by reference paragraphs 1, 2, 4, 14, 15, 28-72, 84, 113, 116, 121, 157, and 158 as if fully stated herein.

208.  TimePayment is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

209.  TimePayment violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes when it failed to review all relevant information provided by the credit reporting agencies.

210.  As a result of TimePayment's violations of the FCRA, Plaintiff has been damaged.

211.  TimePayment negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

212.  Additionally, TimePayment committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

213.  Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against TimePayment Corp. in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## VIOLATIONS OF FLA. STAT. §559.72(9) AGAINST TIMEPAYMENT CORP.

214.  Plaintiff incorporates by reference paragraphs 1, 2, 4, 14, 15, 28-72, 84, 113, 116, 121, 157, and 158 as if fully stated herein.

215. At all relevant times to this action, TimePayment is subject to and must abide by the laws of Florida, including Fla. Stat. §559.72.

216. After Plaintiff placed TimePayment on notice that his accounts were used fraudulently, TimePayment had no reasonable basis to continue to report the fraudulent information to the credit reporting agencies.

217. TimePayment violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when TimePayment knew that the debt was not legitimate or asserting the existence of some other legal right when TimePayment knew that right did not exist.

218. Specifically, TimePayment communicated false credit information about Plaintiff.

219. "Any person who fails to comply with any provision of  §559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the Plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with §559.72, the frequency and persistence of the non-compliance, and the extent to which the noncompliance was intentional." Fla. Stat. §559.77(2) (emphasis added).

220. As a result of TimePayment's violations, Plaintiff suffered damages including but not limited to emotional distress and time spent addressing TimePayment's illegal collection practices.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in his favor and against TimePayment Corp. actual damages, statutory damages, and punitive damages pursuant to Fla. Stat. §559.77; attorneys' fees, litigation expenses and costs of the instant suit; and such other and further relief including as the Court deems equitable and just under the circumstances.

## <u>VIOLATIONS OF 15 U.S.C. §1681s-2(b)</u>
## <u>AGAINST NATIONAL CREDIT SYSTEMS, INC.</u>

221. Plaintiff incorporates by reference paragraphs 1, 2, 4, 16, 17, 28-72, 85, 113, 157, and 158 as if fully stated herein.

222. NCS is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

223. NCS violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes when it failed to review all relevant information provided by the credit reporting agencies.

224. As a result of NCS' violations of the FCRA, Plaintiff has been damaged.

225. NCS negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

226. Additionally, NCS committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

227. Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against National Credit Systems, Inc. in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## VIOLATIONS OF FLA. STAT. §559.72(9) AGAINST NATIONAL CREDIT SYSTEMS, INC.

228.  Plaintiff incorporates by reference paragraphs 1, 2, 4, 16, 17, 28-72, 85, 113, 157, and 158 as if fully stated herein.

229.  At all relevant times to this action, NCS is subject to and must abide by the laws of Florida, including Fla. Stat. §559.72.

230.  After Plaintiff placed NCS on notice that the accounts were opened fraudulently, NCS had no reasonable basis to continue to report the accounts to the credit reporting agencies.

231.  NCS violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when NCS knew that the debt was not legitimate or asserting the existence of some other legal right when NCS knew that right did not exist.

232.  Specifically, NCS communicated false credit information about Plaintiff.

233.  "Any person who fails to comply with any provision of   §559.72 is liable for actual damages and for additional statutory damages as the court may

allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the Plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with §559.72, the frequency and persistence of the non-compliance, and the extent to which the noncompliance was intentional." Fla. Stat. §559.77(2) (emphasis added).

234.   As a result of NCS' violations, Plaintiff suffered damages including but not limited to emotional distress and time spent addressing NCS' illegal collection practices.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in his favor and against National Credit Systems, Inc. actual damages, statutory damages, and punitive damages pursuant to Fla. Stat. §559.77; attorneys' fees, litigation expenses and costs of the instant suit; and such other and further relief including as the Court deems equitable and just under the circumstances.

## <u>VIOLATIONS OF 15 U.S.C. §1681s-2(b)</u><br><u>AGAINST COLUMBIA DEBT RECOVERY, LLC</u>

235.   Plaintiff incorporates by reference paragraphs 1, 2, 4, 18, 19, 28-72, 86, 113, 115, 117, 120, 121, 157, and 158 as if fully stated herein.

236.   Columbia is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

237.    Columbia violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes when it failed to review all relevant information provided by the credit reporting agencies.

238.    As a result of Columbia's violations of the FCRA, Plaintiff has been damaged.

239.    Columbia negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

240.    Additionally, Columbia committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

241.    Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Columbia Debt Recovery, LLC in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## VIOLATIONS OF FLA. STAT. §559.72(9) AGAINST COLUMBIA DEBT RECOVERY, LLC

242.    Plaintiff incorporates by reference paragraphs 1, 2, 4, 18, 19, 28-72, 86, 113, 115, 117, 120, 121, 157, and 158 as if fully stated herein.

243.    At all relevant times to this action, Columbia is subject to and must abide by the laws of Florida, including Fla. Stat. §559.72.

244.   After Plaintiff placed Columbia on notice that the account was opened fraudulently, Columbia had no reasonable basis to continue to report the account to the credit reporting agencies.

245.   Columbia violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when Columbia knew that the debt was not legitimate or asserting the existence of some other legal right when Columbia knew that right did not exist.

246.   Specifically, Columbia communicated false credit information about Plaintiff.

247.   "Any person who fails to comply with any provision of   §559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the Plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with §559.72, the frequency and persistence of the non-compliance, and the extent to which the noncompliance was intentional." Fla. Stat. §559.77(2) (emphasis added).

248.  As a result of Columbia's violations, Plaintiff suffered damages including but not limited to emotional distress and time spent addressing Columbia's illegal collection practices.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in his favor and against Columbia Debt Recovery, LLC actual damages,

statutory damages, and punitive damages pursuant to Fla. Stat. §559.77; attorneys' fees, litigation expenses and costs of the instant suit; and such other and further relief including as the Court deems equitable and just under the circumstances.

## VIOLATIONS OF 15 U.S.C. §1681s-2(b) AGAINST IDEAL COLLECTION SERVICES INC.

249.   Plaintiff incorporates by reference paragraphs 1, 2, 4, 20, 21, 28-72, 155, 157, and 158 as if fully stated herein.

250.   Ideal is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

251.   Ideal violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes when it failed to review all relevant information provided by the credit reporting agencies.

252.   As a result of Ideal's violations of the FCRA, Plaintiff has been damaged.

253.   Ideal negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

254.   Additionally, Ideal committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

255.   Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Ideal Collection Services Inc. in the form of actual damages, statutory

damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## VIOLATIONS OF FLA. STAT. §559.72(9) AGAINST IDEAL COLLECTION SERVICES INC.

256.    Plaintiff incorporates by reference paragraphs 1, 2, 4, 20, 21, 28-72, 155, 157, and 158 as if fully stated herein.

257.    At all relevant times to this action, Ideal is subject to and must abide by the laws of Florida, including Fla. Stat. §559.72.

258.    After Plaintiff placed Ideal on notice that his account was used fraudulently, Ideal had no reasonable basis to continue to report the fraudulent information to the credit reporting agencies.

259.    Ideal violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when Ideal knew that the debt was not legitimate or asserting the existence of some other legal right when Ideal knew that right did not exist.

260.    Specifically, Ideal communicated false credit information about Plaintiff.

261.    "Any person who fails to comply with any provision of   §559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the Plaintiff. In determining the defendant's liability for

60

any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with §559.72, the frequency and persistence of the non-compliance, and the extent to which the noncompliance was intentional." Fla. Stat. §559.77(2) (emphasis added).

262.   As a result of Ideal's violations, Plaintiff suffered damages including but not limited to emotional distress and time spent addressing Ideal's illegal collection practices.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in his favor and against Ideal Collection Services Inc. actual damages, statutory damages, and punitive damages pursuant to Fla. Stat. §559.77; attorneys' fees, litigation expenses and costs of the instant suit; and such other and further relief including as the Court deems equitable and just under the circumstances.

## VIOLATIONS OF 15 U.S.C. §1681s-2(b)
## AGAINST ONLINE INFORMATION SERVICES, INC.

263.   Plaintiff incorporates by reference paragraphs 1, 2, 4, 22, 23, 28-72, 121, 137, 138, 157, and 158 as if fully stated herein.

264.   OIS is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

265.   OIS violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes when it failed to review all relevant information provided by the credit reporting agencies.

266.   As a result of OIS' violations of the FCRA, Plaintiff has been damaged.

267.   OIS negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

268.   Additionally, OIS committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

269.   Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Online Information Services, Inc. in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## VIOLATIONS OF FLA. STAT. §559.72(9) AGAINST ONLINE INFORMATION SERVICES, INC.

270.   Plaintiff incorporates by reference paragraphs 1, 2, 4, 22, 23, 28-72, 121, 137, 138, 157, and 158 as if fully stated herein.

271.   At all relevant times to this action, OIS is subject to and must abide by the laws of Florida, including Fla. Stat. §559.72.

272.   After Plaintiff placed OIS on notice that his accounts were used fraudulently, OIS had no reasonable basis to continue to report the fraudulent information to the credit reporting agencies.

273.   OIS violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when OIS knew that the debt was not legitimate or

asserting the existence of some other legal right when OIS knew that right did not exist.

274.   Specifically, OIS communicated false credit information about Plaintiff.

275.   "Any person who fails to comply with any provision of    §559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the Plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with §559.72, the frequency and persistence of the non-compliance, and the extent to which the noncompliance was intentional." Fla. Stat. §559.77(2) (emphasis added).

276.   As a result of OIS' violations, Plaintiff suffered damages including but not limited to emotional distress and time spent addressing OIS' illegal collection practices.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in his favor and against Online Information Services, Inc. actual damages, statutory damages, and punitive damages pursuant to Fla. Stat. §559.77; attorneys' fees, litigation expenses and costs of the instant suit; and such other and further relief including as the Court deems equitable and just under the circumstances.

## VIOLATIONS OF 15 U.S.C. §1681s-2(b)

## AGAINST BOUNCE AI, INC.

277. Plaintiff incorporates by reference paragraphs 1, 2, 4, 24, 25, 28-72, 118, 119, 121, 157 and 158 as if fully stated herein.

278. Bounce is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

279. Bounce violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes when it failed to review all relevant information provided by the credit reporting agencies.

280. As a result of Bounce's violations of the FCRA, Plaintiff has been damaged.

281. Bounce negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

282. Additionally, Bounce committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

283. Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Bounce AI, Inc. in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## VIOLATIONS OF FLA. STAT. §559.72(9)

64

## AGAINST BOUNCE AI, INC.

284.   Plaintiff incorporates by reference paragraphs 1, 2, 4, 24, 25, 28-72, 118, 119, 121, 157 and 158 as if fully stated herein.

285.   At all relevant times to this action, Bounce is subject to and must abide by the laws of Florida, including Fla. Stat. §559.72.

286.   After Plaintiff placed Bounce on notice that his accounts were used fraudulently, Bounce had no reasonable basis to continue to report the fraudulent information to the credit reporting agencies.

287.   Bounce violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when Bounce knew that the debt was not legitimate or asserting the existence of some other legal right when Bounce knew that right did not exist.

288.   Specifically, Bounce communicated false credit information about Plaintiff.

289.   "Any person who fails to comply with any provision of   §559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the Plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with §559.72, the frequency and persistence of the non-compliance, and the extent to which the noncompliance was intentional." Fla. Stat. §559.77(2) (emphasis added).

290.  As a result of Bounce's violations, Plaintiff suffered damages including but not limited to emotional distress and time spent addressing Bounce's illegal collection practices.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in his favor and against Bounce AI, Inc. actual damages, statutory damages, and punitive damages pursuant to Fla. Stat. §559.77; attorneys' fees, litigation expenses and costs of the instant suit; and such other and further relief including as the Court deems equitable and just under the circumstances.

## **VIOLATIONS OF 15 U.S.C. §1681s-2(b)**
## **AGAINST LAUNCH SERVICING, LLC**

291.  Plaintiff incorporates by reference paragraphs 1, 2, 4, 26-72, 114, 121, 157 and 158 as if fully stated herein.

292.  Launch is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

293.  Launch violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes when it failed to review all relevant information provided by the credit reporting agencies.

294.  As a result of 295.  Launch's violations of the FCRA, Plaintiff has been damaged.

295.  295.  Launch negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

296. Additionally, Launch committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

297. Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Launch in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## VIOLATIONS OF FLA. STAT. §559.72(9)
## AGAINST LAUNCH SERVICING, LLC

298. Plaintiff incorporates by reference paragraphs 1, 2, 4, 26-72, 114, 121, 157 and 158 as if fully stated herein.

299. At all relevant times to this action, Launch is subject to and must abide by the laws of Florida, including Fla. Stat. §559.72.

300. After Plaintiff placed Launch on notice that his accounts were used fraudulently, Launch had no reasonable basis to continue to report the fraudulent information to the credit reporting agencies.

301. Launch violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when Launch knew that the debt was not legitimate or asserting the existence of some other legal right Launch knew that right did not exist.

302. Specifically, Launch communicated false credit information about Plaintiff.

303. "Any person who fails to comply with any provision of §559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the Plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with §559.72, the frequency and persistence of the non-compliance, and the extent to which the noncompliance was intentional." Fla. Stat. §559.77(2) (emphasis added).

304. As a result of Launch's violations, Plaintiff suffered damages including but not limited to emotional distress and time spent addressing Launch's illegal collection practices.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in his favor and against Launch Servicing, LLC actual damages, statutory damages, and punitive damages pursuant to Fla. Stat. §559.77; attorneys' fees, litigation expenses and costs of the instant suit; and such other and further relief including as the Court deems equitable and just under the circumstances.

## JURY DEMAND

305. Plaintiff demands a trial by jury on all issues so triable.

Dated: 11/13/2025                     *Respectfully submitted,*

                                        **SHARMIN & SHARMIN, P.A.**

                                        */s/ Eiman Sharmin*
                                        Eiman Sharmin, Esq.
                                        eiman@sharminlaw.com
                                        FBN: 716391
                                        830 North Federal Highway
                                        Lake Worth, FL 33460
                                        Main: 561-655-3925
                                        Fax: (844) 921-1022


                                        *Attorneys for Plaintiff*